IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| RONNIE JACKSON, <br> Institutional ID No. 02411339 <br><br> Plaintiff, <br><br> v. <br><br> TDCJ JOHN MIDDLETON UNIT, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 1:23-CV-00093-BU |

## **ORDER OF PARTIAL DISMISSAL**

Plaintiff Ronnie Jackson, an inmate with the Texas Department of Criminal Justice (TDCJ), brings this action against Defendants the TDCJ John Middleton Unit, Chimdi Akwitti, and FNU McCain (collectively, "the Defendants"),[1] alleging that they violated his constitutional rights. Jackson's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because the Court granted him leave to proceed *in forma pauperis*, Dkt. No. 6, and he sues government officials, *see* Dkt. No. 1.

For the reasons explained below, the Court finds that Jackson has pleaded a substantively plausible conditions-of-confinement claim under the Eighth Amendment against Akwitti and McCain, but his other claims must be DISMISSED because they are barred by sovereign immunity, are frivolous, or fail to state a claim upon which relief may be granted.

---

[1] The Court was able to presumptively identify FNU McCain as Phillip McCain. **The Clerk is directed to conform the docket accordingly.**

1

## I. JURISDICTION

Jackson brings his claims under 42 U.S.C. § 1983, which provides the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1. Venue is proper in the Northern District of Texas, Abilene Division, because Jackson's claims arise out of his incarceration at the TDCJ Middleton Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter this Order after United States District Court Judge James Wesley Hendrix transferred Jackson's case to the undersigned for preliminary screening and Jackson consented to the undersigned exercising the full jurisdiction of this Court. Dkt. Nos. 7, 12; 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Gym Floor Cases[2]

Jackson's case is one of at least eleven filed in the Abilene Division where the plaintiff was an inmate at the Middleton Unit and assigned temporarily in 2022 not to a cell, but to a spot on the gym floor.[3] Each case alleges that the conditions inside the gym were unconstitutional, leading the Court to refer to these cases collectively as "the Gym Floor Cases."

The Middleton Unit can hold nearly 2,200 inmates and is both a general prison and

---

[2] The Court offers the section merely as context.

[3] *See Dunn v. Texas Dep't of Crim. J., John Middleton Unit, et al.*, No. 1:22-CV-142-BU; *Gregory v. Texas Dep't of Crim. J., John Middleton Unit, et al.*, No. 1:22-CV-156-BU; *Noles v. Texas Dep't of Crim. J., John Middleton Unit, et al.*, No. 1:22-CV-198-BU; *Lloyd v. Texas Dep't of Crim. J., John Middleton Unit, et al.*, No. 1:23-CV-4-BU; *Roy v. Texas Dep't of Crim. J., John Middleton Unit, et al.*, No. 1:23-CV-32-BU; *Johnson v. Collier, et al.*, No. 1:23-CV-33-BU (dismissed without prejudice under Fed. R. Civ. P. 41(b)); *Gale v. Collier, et al.*, No. 1:23-CV-92-BU; *Plemmons v. TDCJ John Middleton Unit, et al.*, No. 1:23-CV-212-BU; *Reel v. TDCJ John Middleton Unit, et al.*, No. 1:23-CV-228-BU; *Johnson v. TDCJ (Middleton Unit), et al.*, No. 1:23-CV-237-BU (dismissed without prejudice under Fed. R. Civ. P. 41(b)).

designated transfer unit, meaning many inmates at the Unit are there on a temporary basis. Each of the Gym Floor Cases involves an inmate housed at the Middleton Unit between July and November 2022 and assigned to the Unit's gym.[4] Across these cases, some plaintiffs were in the gym for several weeks, while others were housed there for nearly three months.

The Gym Floor plaintiffs generally agree on the basic conditions inside the gym. They allege that the gym housed between 150–225 inmates at any given time, and inmates were assigned spots on the gym's floor. Some inmates received mats and limited bedding, but others received only a blanket and were made to sleep directly on the gym floor because the gym did not have raised bunks.

Common as well are the descriptions of the toilet situation inside the gym. There were only two urinals and two toilets inside the gym's bathroom, which were frequently in and out of service—often only one or two were available. Some plaintiffs even allege instances when no toilets could flush.

Many also allege that the plumbing in the gym's bathroom would back up and spew raw sewage onto the floor and into parts of the gym where inmates slept. Compounding this, the plaintiffs also describe extensive rodent problems, claiming rats would crawl amongst the inmates at night and steal inmates' food. They also mention that rats and rat feces were commonly found in the chow hall and prepared food.

---

[4] During its review, the Court learned that the plaintiffs were assigned to the gym according to an overarching policy of placing inmates with heat restrictions in air-conditioned housing. For the plaintiffs, each had a heat restriction because of a medical condition or prescription medication, and it appears that the gym was the only place at Middleton with air conditioning.

Most also complain that they were denied access to a phone until they had seen the Unit Classification Committee (UCC), whom most did not see during their stay at Middleton. Additionally, most plaintiffs claim that they did not have access to showers in the gym, but instead were made to walk outside and to the Unit's intake building to take showers without hot water. The Gym Floor plaintiffs also universally complain that their attempts to grieve these conditions were not addressed.

Each plaintiff also alleges that Warden Akwitti and Assistant Warden McCain were aware of these conditions. The plaintiffs describe instances when the Wardens would visit the gym and were confronted by inmates about the living conditions. Moreover, each plaintiff maintains that the conditions inside the gym did not materially improve during their stay.

### B. Jackson's Allegations[5]

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favors the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in his or her complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

---

[5] Some of the general conditions described above as context are repeated here as specifically alleged by Jackson.

4

Jackson arrived at the Middleton Unit on or about September 26, 2022, where he remained until sometime in November 2022. Dkt. No. 11 at 5. During much of this time, Jackson was housed in the Unit's gym. Upon his arrival, he was assigned a spot on the floor to sleep on and given a mattress that smelled of urine and was ripped open with much of the stuffing missing. *Id.* at 4. Jackson highlights issues with plumbing and rodents inside the gym as well. He mentions that rats clogged drainpipes and inmates would pull dead rats out of drains. *Id.* at 3. Additionally, toilets would overflow and cause water and waste to overflow into parts of the gym where inmates slept. *Id.* at 5. Jackson says that these conditions aggravated his preexisting health issues. Jackson arrived at Middleton with an enlarged prostate, and he claims that being made to get up and down from the floor caused his prostate to begin to bleed. *Id.* at 3.

As for the defendants' awareness of these conditions, Jackson claims that Awkitti and McCain visited the gym and that he complained to them about his medical issues and the conditions inside the gym. *Id.* at 8 He maintains that the conditions did not improve before he left the Unit in November 2022. *Id.* at 5.

### III.  THE PARTIES

Jackson filed suit on May 4, 2023, naming TDCJ, Akwitti, and McCain as defendants. Dkt. No. 1. He supplemented his claims and allegations through his questionnaire responses. Dkt. No. 11.

Jackson sues TDCJ because it "is where the unconstitutional violations occurred." Dkt. No. 1 at 3. He brings claims against Akwitti and McCain for the conditions inside the

gym and their failures to remedy those conditions while he was there. The Court construes this as bringing a conditions-of-confinement claim under the Eighth Amendment.

### IV. LEGAL STANDARDS

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court.

6

*Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

7

strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V. ANALYSIS

To state a claim under 42 U.S.C. § 1983, Jackson must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). The Court will first assess the claims against TDCJ and then the claims against Wardens Akwitti and McCain.

### A. Jackson's claims against TDCJ are barred by sovereign immunity.

The Eleventh Amendment bars suits against a nonconsenting state in federal court for monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984). And "[n]either Texas nor TDCJ has waived its immunity[.]" *Cox v. Texas*, 354 F. App'x 901, 903 (5th Cir.2009) (per curiam). Jackson's claims against TDCJ itself are for money damages only, and for this reason, are barred by Eleventh Amendment immunity and must be dismissed.[6] *Mayfield v. Texas Dep't of Crim. J.*, 529 F.3d 599, 604 (5th Cir.

---

[6] The Court does not construe Jackson's pleadings to bring official capacity claims; however, to the extent he does, any such claim is frivolous and barred by sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding officer sued in an official capacity is not a suable "person" under § 1983;

2008); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (quoting *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987) (internal quotation marks omitted)).

> **B.    Jackson has pleaded a plausible conditions-of-confinement claim against Akwitti and McCain.**

"[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), however, nor does it "permit inhuman ones," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prisons have a duty to meet inmates' basic needs by furnishing adequate food, water, shelter, clothing, medical care, and a safe environment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). Such basic needs constitute the "humane conditions of confinement" required under the Eighth Amendment. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001).

To prevail on a conditions-of-confinement claim, a plaintiff must plausibly state an objective and a subjective element. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). First, the plaintiff must establish objectively that a prison official deprived him of the minimal requirements for civilized measure of life's necessities, and thus exposed him to a substantial risk of injury. *Id.* (citing *Farmer*, 511 U.S. at 834).

Although a single condition may satisfy this prong, a plaintiff may also show that multiple conditions in the aggregate deprived them of one of life's basic needs. *Gates v.*

---

*Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *6 (N.D. Tex. Aug. 25, 2021) (Hendrix, J.) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation and internal quotation marks omitted)).

*Cook*, 376 F.3d 323, 333 (5th Cir. 2004) ("Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . .") (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Crucial as well is the length of time an inmate has been subjected to the condition. *See Hutto v Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.").

Second, the plaintiff must demonstrate subjectively that the prison official knew that the inmate faced a substantial risk of serious harm and that the official "actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 n.8). More still, a plaintiff must then show that the official—despite being subjectively aware of a substantial risk of harm—"disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Finally, to recover compensatory damages, a prisoner must also show that the condition injured them in some way. *Coleman v. Dallas Cnty. Jail*, No. 3:19-cv-3009-L-BN, 2020 WL 7029915, *4 (N.D. Tex. Oct. 22, 2020). Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e. The injury under a conditions of confinement claim

must be "more than *de minimis* but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (cleaned up).

Jackson alleges that for several weeks he slept on a mattress with minimal stuffing on the floor; was exposed to overflow from toilets; lived amongst rats, dead and living; and sometimes had non-existent access to a functioning toilet. Jackson also alleges that Akwitti and McCain were personally aware of these conditions because they had visited the gym on multiple occasions and saw the conditions themselves. Moreover, he says that they were confronted by Jackson and other inmates with complaints about these conditions. Jackson alleges that despite this awareness, Akwitti and McCain did nothing to remedy the conditions during his time at Middleton. Finally, Jackson claims that these conditions aggravated preexisting medical issues causing him pain and to bleed.

The Court finds that these allegations, taken as true, plausibly allege that the conditions in the gym posed a substantial risk of harm. At this stage, the Court also finds it plausible that Wardens Akwitti and McCain were aware of this risk and demonstrated deliberate indifference in failing to timely mitigate it. *See, e.g.*, *McCord v. Maggio*, 927 F.2d 844, 847–49 (5th Cir. 1991) (finding a violation of the Eighth Amendment where a prisoner lived in a cell for ten months without a bunk and where sewage backed into the cell when it rained, causing the inmates to sleep on a mattress soaked with sewage).

### C.    Jackson is not entitled to further leave to amend.

Still, there is the issue of whether the Court must give Jackson leave to amend. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend

is not required, however, where an amendment would be futile; in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the Court permitted Schmidt to amend his Complaint through his responses to the Court's questionnaire and testimony at the *Spears* hearing. Dkt. Nos. 36, 53. Given these previous opportunities, the Court concludes that further amendments would be futile.

## VI. CONCLUSION

For the reasons above, the Court:

(1) DISMISSES Jackson's claims against TDCJ because they seek relief from a defendant immune from such relief and therefore are frivolous; and

(2) DISMISSES Jackson's claims against the individual Defendants in their official capacities because they are frivolous and seek relief from a defendant immune from such relief.

The Court does find that Jackson's conditions-of-confinement claim against Akwitti and McCain survives judicial screening and will order these defendants to answer or respond in a separate order.

ORDERED this 9th day of August 2024.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE